M. & F. HOLDING CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47843. Promulgated June 23, 1932.

*Kenneth C. Quencer, Esq.,* for the petitioner.
*John D. Kiley, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: On January 16, 1930, the respondent proposed for assessment against the petitioner deficiencies in income taxes for the fiscal years ending March 31, 1927, and March 31, 1928, amounting, respectively, to the sums of $1,328.47 and $1,245.48. The respondent also proposed to assess the additional amount of $311.37 for the fiscal year ending March 31, 1928, as a penalty for petitioner's failure to file its income-tax return for that year within the time prescribed by law.

In this proceeding the petitioner requests redetermination of the above stated deficiencies and also requests that the penalty proposed for assessment be not imposed.

The petitioner alleges as ground of error: "Failure of the Commissioner to allow the sum of $25,000, paid by petitioner in connection with negotiating and closing a long-term lease, as an expense in the year paid."

The petitioner claims that it is entitled to charge off this expense in the fiscal year ending March 31, 1926, and to deduct the resulting net loss from income in the two subsequent fiscal years, which are the taxable years in question.

The petitioner is a corporation, organized under the laws of the State of New York in February, 1925. The matters connected with its organization were conducted by John J. Quencer, an attorney at law, who was employed by the petitioner to take care of its affairs from its

beginning. Immediately upon its incorporation Quencer procured the conveyance to the petitioner of certain premises situated at the southeasterly corner of Seventh Avenue and 56th Street in the City and County of New York and known as Nos. 875, 877 and 879 Seventh Avenue, and Nos. 162 and 164 West 56th Street. These premises were conveyed to the petitioner subject to a mortgage securing payment of the principal sum of $200,000, with interest, and also subject to the lien of certain leases. The property was paid for by mortgage bonds executed by petitioner, and Quencer drafted the bonds and mortgage. Quencer also negotiated the purchase by petitioner of the leases which were liens upon the property at the date of conveyance, and drafted certain bonds excuted and delivered in payment for the leases.

Upon the conveyance of the property to the petitioner, Quencer began negotiations to lease it on a long-term lease. Thereafter a lease dated March 20, 1925, was entered into between petitioner, as lessor, and the 162 West 56th Street Corporation, as lessee, leasing the property for a term of 63 years, beginning May 1, 1925, at an annual rental of $30,000, which rental, as provided in the lease, should be increased periodically in the manner set forth in the instrument. Quencer drafted this lease. The lease provided, among other things, for the construction of a new building on the premises leased.

Under date of May 18, 1925, the petitioner, as owner of the fee, and the 162 West 56th Street Corporation, as the borrower, entered into an agreement with S. W. Straus & Company by which S. W. Straus & Company agreed to loan to the 162 West 56th Street Corporation the sum of $960,000, to be used for the purpose of constructing a 15-story apartment house on the premises hereinbefore described. The petitioner and the lessee agreed that they would mortgage the fee and the leasehold as security for the loan. Thereupon the petitioner and the 162 West 56th Street Corporation executed and delivered a trust mortgage conveying the premises, the leasehold and the building to be erected to a trustee as security for an issue of first mortgage serial bonds to be executed by the 162 West 56th Street Corporation in the sum of $960,000, which had been advanced or was to be advanced by S. W. Straus & Company. Quencer represented the interests of petitioner in all matters relating to the loan agreement with S. W. Straus .& Company and to the trust mortgage.

Quencer performed other services for the petitioner during the fiscal year ending March 31, 1926, including advice on corporate matters, management of petitioner's office, preparation of minutes of meetings held by the board of directors, and supervision on peti-

tioner's behalf of matters relating to the construction of the new building.

On March 25, 1925, Quencer rendered to petitioner a bill for services, stated therein as follows:

To services as per agreement in connection with negotiations toward the entering into of a new lease of the premises on the southeast corner of 56th Street and 7th Avenue, and conclude the execution of the same and other instruments and documents in connection therewith, and to services in connection with the organization of this Company, and the transfer to it of title to said premises, holding of organization meeting, preparing all By-Laws, the holding of the Directors meeting, the drawing of other documents to carry out the above transactions_____ $25,000.00

*Disbursements*

Paid Secretary of State organization tax and filing fee_____ $80.00
Paid New York County clerk filing_____ 6.00
Telegrams Secretary State and car fares and postage_____ 1.98
Internal Revenue Stamps_____ 10.00
Bill Broun Green Co_____ 18.90
Books_____ 2.50
                                                          ———— 119.38

                                                          $25,119.38

In its income-tax return for the fiscal year ending March 31, 1926, petitioner charged the total sum stated in Quencer's bill to capital, describing the item as " organization expense." The petitioner now claims, however, that the item was so charged in the return by the error of an accountant and that, as a matter of fact, the sum designated as " organization expense " was paid to Quencer and accepted by him as payment for all services rendered and to be rendered by him from the date of the organization of the petitioner through the fiscal year ended March 31, 1926. Petitioner further contends that whatever part of such sum is deductible as the ordinary and necessary expense of business is deductible in the year in which paid.

There is some testimony in the record tending to prove that petitioner paid to Quencer the amount of his bill as payment for all services rendered and to be rendered by him up to March 31, 1926. In our opinion, however, this testimony does not overcome the weight of the documentary evidence which is a part of the record. The services stated in Quencer's bill included only matters connected with the organization of petitioner, matters relating to the acquisition of title to the premises hereinbefore described and services consisting of the negotiation and drafting of the 63-year lease. Moreover, in the various communications addressed to the respondent or his repre-

sentatives, which are part of the record and signed by petitioner's president, the petitioner in effect restates its claim that the amount charged to capital in the return for the fiscal year ended March 31, 1926, was paid for organization expense.

The petitioner did not offer in evidence its income-tax returns for the fiscal years ended respectively March 31, 1927, and March 31, 1928, which are the taxable years in question. Nor does the evidence satisfactorily disclose in what year the sum in question was actually paid by the petitioner to Quencer. However, in the notice of deficiencies attached to the petition it appears substantially that the respondent disallowed the deduction of $14,000 from income for the year ended March 31, 1927, and disallowed a deduction of $11,119.38 from income for the year ended March 31, 1928. Both of these disallowed sums are referred to in the notice of deficiencies as deductions for " organization expense." The respondent allowed organization expense in the sum of $500 to be deducted from income for the fiscal year ended March 31, 1927. These three sums total $25,119.38, the sum charged by petitioner to capital in its return for the fiscal year ended March 31, 1926, and described therein as " organization expense." It also appears that the respondent held that $24,500 of the total sum was paid as a fee for negotiating and closing the long-term lease and that respondent prorated that sum over the term of the lease, allowing a deduction of one sixty-third of the amount in each of the taxable years.

In its protest against the proposed deficiencies, which were signed by petitioner's president and were executed respectively February 13, 1929, and May 22, 1929, the petitioner states in effect that the aggregate of $25,000 was paid by the petitioner " for legal expenses in connection with the negotiation and culmination of the lease of the corporation's property."

It is true that part of the services set forth in Quencer's bill was described as connected with the transfer to the petitioner of the premises located at the southeasterly corner of Seventh Avenue and 56th Street in the City and County of New York. It is clear, however, that any fee paid for such a service was not an ordinary and necessary expense of business for the reason that the evidence establishes that the property described was acquired by petitioner for the purpose of deriving income therefrom. Therefore, any fee paid for services connected with such acquisition was part of the cost of the property and consequently a capital charge. *First National Bank of St. Louis*, 3 B. T. A. 807; *Stephens Fuel Co.*, 13 B. T. A. 666; *Chestnut Farms Dairy*, 19 B. T. A. 192; *Charles J. Livingood, Executor*, 25 B. T. A. 585. It follows that whatever part, if any,

of the fee of $25,000 was paid for services connected with the transfer of the property described would not be deductible from income as an ordinary and necessary expense of business.

It is our opinion that the evidence is wholly insufficient to overcome the presumption of correctness attaching to respondent's determination. The petitioner concedes in its brief that no more than the sum of $500 is deductible as "organization expense." The respondent's determination, that the balance of the sum of $25,000, namely, $24,500, was payment for services connected with the negotiation and culmination of the long-term lease and should, therefore, be prorated over the term of the lease, is in accordance with *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381 (affirming in part *Bonwit Teller & Co.*, 17 B. T. A. 1019), and with decisions of this Board. *James Butler*, 19 B. T. A. 718; *Evalina M. Howard*, 19 B. T. A. 865; *Mary C. Young*, 20 B. T. A. 692; *Spinks Realty Co.*, 21 B. T. A. 674.

The petitioner also contends that the penalty amounting to $311.37 proposed for addition to the deficiency in tax for the fiscal year ended March 31, 1928, should not be imposed.

It appears that the petitioner's income-tax return for the fiscal year ended March 31, 1928, was not filed until a few days after the time limited for such filing. It also appears that at the time the return should have been filed the petitioner's president was absent from New York, either at Atlantic City or on an automobile trip and could not be reached before the time for filing the return expired. Section 291 of the Revenue Act of 1928 provides that in case of any failure to make and file a return within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not to wilful neglect, no such addition shall be made.

It is our opinion that no reasonable cause for petitioner's failure to file its return within the time limited is shown. The statute provides that a corporate return may be executed by the president, vice president or other principal officer of the corporation, and by the treasurer or assistant treasurer. The evidence does not disclose that there was no officer other than the president who could have executed the return and, in any event, the excuse offered is not, in our judgment, of sufficient merit to justify us in finding that the failure to file the return within the time limited was due to a reasonable cause.

*Judgment will be entered for the respondent.*